IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO A. TORO McCOWN,

Plaintiff

v.

LAYLANIE RUIZ-OLMO; SOLID
WASTE AUTHORITY OF PUERTO
RICO; HONORABLE JAVIER VÉLEZ
AROCHO, IN HIS PERSONAL AND
OFFICIAL CAPACITIES AS
SECRETARY OF THE DEPARTMENT OF
NATURAL AND ENVIRONMENTAL
RESOURCES OF PUERTO RICO;          CIVIL 08-1058 (FAB) (JA)
JAVIER QUINTANA MÉNDEZ, IN HIS
PERSONAL AND OFFICIAL
CAPACITIES AS EXECUTIVE
DIRECTOR OF THE SOLID WASTE
AUTHORITY OF PUERTO RICO; LUIS
MIGUEL CRUZ, IN HIS PERSONAL
AND OFFICIAL CAPACITIES AS
ADMINISTRATOR OF THE
ENVIRONMENTAL AGENCIES
BUILDINGS; ABC INSURANCE CO.;
JOHN DOE; STATE INSURANCE FUND
CORPORATION,

Defendants

OPINION AND ORDER

    This matter is before the court on the motion to dismiss of defendants Solid

Waste Authority, Javier Quintana Méndez, and Luis Miguel Cruz (collectively

"SWA").  (Docket No. 23.)  The motion was filed February 27, 2008.  In it, the

SWA invokes Rule 12(b)(1) of the Federal Rules of Civil Procedure (lack of subject

CIVIL 08-1058 (FAB) (JA)                 2

matter jurisdiction), as well as Rule 12(b)(6) (failure to state a claim upon which relief can be granted).  Plaintiff Julio A. Toro McCown ("Toro") responded to defendants' motion on March 25, 2008.  (Docket No. 46.)  That same day, Toro moved to voluntarily dismiss defendants Department of Natural and Environmental Resources ("DRNA") and Honorable Javier Vélez Arocho, Secretary of the DRNA, because those two defendants and Toro had reached an agreement to grant Toro the reasonable accommodation he sought.  (Docket No. 47.)  The court granted Toro's motion on June 16, 2008, and dismissed defendants DRNA and Vélez Arocho without prejudice.  (Docket No. 56.)  On April 1, 2008 the SWA submitted its reply to Toro's response.  (Docket No. 49.)  On April 8, Toro filed a surreply in response to the SWA's reply.  (Docket No. 51.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Toro filed his complaint on January 14, 2008.  He asserts that there is federal subject matter jurisdiction over this cause of action because it arises under the Constitution and laws of the United States.  (Docket No. 1.)  He invokes the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794(a), the Civil Rights Act, 48 U.S.C. §§ 1983, 1988, and Section 1 of the Fourteenth Amendment to the United States Constitution.  He seeks an injunction ordering defendants to transfer Toro from the Environmental Agencies Building, where he worked for the DRNA under

CIVIL 08-1058 (FAB) (JA)                3

allegedly unhealthy conditions, to a new office.  Toro also demands compensatory damages of $7,000,000, as well as punitive damages of $7,000,000 for harm suffered under these unsafe conditions.  Finally, Toro seeks reasonable attorney's fees, costs, and expenses.

The material factual allegations of the complaint are not disputed in defendants' motion or reply brief, and are recounted here in the light most favorable to Toro.  Toro has been an employee of the DRNA since 1992, and "at all times relevant to the complaint."  (Docket No 1, at 3, ¶ 5, at 4-5, ¶ 11.)  The only time Toro ever worked for the SWA was from 1988-1992.  (Id. at 3, ¶ 5.) The DRNA is responsible for the protection, conservation, and proper use of Puerto Rico's natural resources.  (Id. at 4-5, ¶ 11.)  The SWA's function is to handle the administrative and operational aspects of handling solid waste products.  (Id. at 5, ¶ 12.)  At all times relevant, the SWA owned the Environmental Agencies Building in Rio Piedras, Puerto Rico, where Toro's DRNA office was relocated in April 2005.  (Id. at 8, ¶ 21.)

Prior to this relocation, Toro had never suffered from any infirmities of the lungs, or from any pulmonary or branchial disease.  (Id. ¶¶ 20-22.)  Once Toro and some other employees began working in the new building, however, they began developing allergies and experiencing shortness of breath.  (Id. ¶ 21.)  On February 17, 2007, Toro was diagnosed with pulmonary fibrosis, a diagnosis that

CIVIL 08-1058 (FAB) (JA)                4

was confirmed on November 1, 2007 by an evaluation requested by the DRNA. (Id. at 9, ¶ 25.)   The physician that performed the November evaluation recommended "that [Toro] be relocated to another area free of pollution until the environmental problem in the work area is resolved." (Id.)  Defendants did not, however, relocate Toro despite the existence of empty offices in a nearby building. (Id. at 12, ¶ 37.)  Toro alleges that, as a result of these events, he has suffered an exacerbated medical condition and emotional distress.

## II.  STANDARD OF REVIEW

A.    Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a case if the court lacks jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1). Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed.  Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Kikkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)).  The burden is on the party asserting federal jurisdiction to demonstrate that such jurisdiction exists.  Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (quoting Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992)).  The complaint must be construed liberally, treating the well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  Burgos v. Citibank, N.A., 432 F.3d 46, 48 (1st

CIVIL 08-1058 (FAB) (JA)                    5

Cir. 2005) (citing <u>Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.</u>, 410 F.3d 17, 20 (1st Cir. 2005)).

B.    Failure to State a Claim

A proper pleading under Federal Rule of Civil Procedure 8(a)(2) must contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Federal Rule of Civil Procedure 12(b)(6) allows a litigant to move for the dismissal of an action for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Dismissal under the rule is appropriate where the plaintiff has failed to show its claim is at least "plausible."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. at 1965 (doing away with the language of <u>Conley v. Gibson</u>, 355 U.S. at 45-46, which held that dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In ruling upon a Federal Rule of Civil Procedure 12(b)(6) motion, the court must accept as true all the well-pleaded factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff.  <u>Perry v. New England Bus. Serv., Inc.</u>, 347 F.3d 343, 344 (1st Cir. 2003) (citing <u>Beddall v. State St. Bank & Trust Co.</u>, 137 F.3d 12, 16 (1st Cir. 1998)).

CIVIL 08-1058 (FAB) (JA)                6

Accordingly, to survive a 12(b)(6) motion, plaintiff must present "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n.2 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

III.  DISCUSSION

At issue is whether Toro's federal law claims can withstand a motion to dismiss.  Toro asserts that subject matter jurisdiction exists under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (jurisdiction over claims arising under Congressional Acts protecting civil rights).  He states that 28 U.S.C. § 1367 confers the federal court with supplemental jurisdiction over the Puerto Rico law claims in that those claims "form part of the same case or controversy under Article III of the United States Constitution" as the claims over which the court has original jurisdiction.  I turn first to Toro's claims for injunctive relief.

A.    Injunctive Relief

The first two counts of Toro's complaint seek an injunction ordering defendants to grant Toro a reasonable accommodation because of his disability. He has now received the reasonable accommodation sought, and the question becomes whether the first two counts are therefore moot.  (Docket No. 46, at 11.)

CIVIL 08-1058 (FAB) (JA)                          7

In order for the court to adjudicate a matter, Article III of the United States Constitution requires that there be a case or controversy between the parties. Allen v. Wright, 468 U.S. 737, 750 (1984); see U.S. Const. art. III, § 2.  "[A] litigant must have suffered, or be threatened with , an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Johansen v. United States, 506 F.3d 65, 69 (1st Cir. 2007) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)).  Where "the desired modification of [defendant's] behavior underlying the plaintiff's complaint . . . has already been accomplished" it is appropriate to find a claim moot.  Johansen v. United States, 506 F.3d at 69.

Here, the desired modification in defendant's behavior sought by Toro was for defendants to transfer him to a new location where his lungs could be free of ambient contaminants.  (Docket No. 1, at 15-16, ¶¶ 50-57.)  Toro has already obtained this relief through an agreement with the DRNA, whereby "the injunction relief became moot," according to Toro's response to the SWA's motion to dismiss. (Docket No. 47.)

B.    Damages

   1.    The Rehabilitation Act

Toro seeks damages in the remaining four counts.  In the first of these he invokes section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794.  Section (a) of that Act provides:

CIVIL 08-1058 (FAB) (JA)                    8

> [n]o otherwise qualified individual with a disability . . .
> shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity
> receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Thus, the elements necessary to state a *prima facie* case under the Act are: (1) plaintiff is an individual with a disability (2) who is otherwise qualified (3) and who was discriminated against or denied a reasonable accommodation (4) by an entity receiving federal financial assistance. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 20 (1st Cir. 2004). "Unlike the three other elements of 29 U.S.C. § 794, 'receipt of federal funds' also directly implicates the district court's subject matter jurisdiction over a Rehabilitation Act claim." Rivera-Flores v. P.R. Tel. Co., 64 F.3d 742, 748 (1st Cir. 1995) (citing Bentley v. Cleveland County Bd. of County Comm'rs, 41 F.3d 600, 603-04 (10th Cir. 1994)).  Indeed, "[a]n indispensable jurisdictional element of a Rehabilitation Act claim is a showing that a defendant accused of discrimination is a recipient of federal financial assistance." Steir v. Girl Scouts of the USA, 383 F.3d 7, 13 (1st Cir. 2004) (citing Schultz v. Young Men's Christian Ass'n of the United States, 139 F.3d 286, 288 (1st Cir. 1998)).  The parties made much of whether the defendants are immune to claims under the Rehabilitation Act, but the issue is simple:  if an entity accepts federal funds, it thereby waives Eleventh Amendment immunity from claims under the Rehabilitation Act.  42 U.S.C. §

CIVIL 08-1058 (FAB) (JA)                    9

2000d-7(a)(1); <u>Orria-Medina v. Metro. Bus Auth.</u>, 565 F. Supp. 2d 285, 300 (D.P.R. 2007); <u>see, e.g.</u>, <u>Nieves-Márquez v. Puerto Rico</u>, 353 F.3d 108, 129 (1st Cir. 2003) ("Congress has clearly expressed its intent to require waiver [and] the Commonwealth [of Puerto Rico] has waived its immunity by accepting federal funds.").

I start by analyzing this fourth element of the Rehabilitation Act - whether the SWA is a federal funding recipient - because it is jurisdictional in nature. Absent the establishment of this element, there is no federal jurisdiction over the Rehabilitation Act claim as a whole.  A review of the complaint reveals that not once does Toro allege that the SWA receives any form of federal financial assistance.   Paragraphs 11 and 12 of the complaint provide background information on the DRNA and the SWA, respectively.  (Docket No. 1, at 4-5, ¶¶ 11, 12.)  While paragraph 11 alleges that the DRNA "receives federal funds from diverse sources," paragraph 12, which relates to the SWA, is conspicuously without such an allegation.  Paragraphs 58-62 of the complaint present the same juxtaposition.  Those paragraphs, which constitute the plea for recovery itself under the Rehabilitation Act, explicitly allege again that the DRNA "receives Federal Funds." (<u>Id.</u> at 16, ¶ 60.)  No mention is even made of the SWA in these paragraphs, however, let alone any allegation that the SWA receives federal funds.  In alleging that the DRNA received federal funds, Toro made it clear he

CIVIL 08-1058 (FAB) (JA)                        10

was aware of the federal funding requirement of his claim.   It would seem incongruous for him to allege twice that the DRNA received federal funds, while failing to make any such allegation against the SWA, *unless* he was without a basis for such an allegation.

On the other hand, the complaint itself does identify the SWA as a defendant, which is significant because the Rehabilitation Act count requests a reasonable accommodation from "*defendants*" and seeks recovery because of actions by "*defendants.*"  (Docket No. 1, at 17, ¶ 61, emphasis added.)

The question therefore is whether Toro, in failing not only to allege that the SWA received federal funds but to even mention the SWA in its third cause of action, has satisfied the jurisdictional fourth element of a cause of action against the SWA under Rehabilitation Act.

"Modern notions of 'notice pleading' notwithstanding, a plaintiff, we think, is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d at 515.  In Gooley, the plaintiff's allegation of an essential element of his claim was deemed to be a "naked conclusion" and the defendant's motion to dismiss was granted.  Id.  The plaintiff's complaint did, however, at least *allege* that essential element.  Id. Here, Toro does not even go that far.

CIVIL 08-1058 (FAB) (JA)                    11

Gooley, however, bears less precedential value than the recent United States Supreme Court decision of Bell Atl. Corp. v. Twombly.  In Twombly, the Court sought to clarify the standard to be applied in a 12(b)(6) motion to dismiss. The essential factor that the court identified is whether plaintiff's claim is "plausible."  Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965.  This is the standard I apply:  is it plausible that the SWA has received federal funding?

In 1988, Congress broadened its definition of an entity that should be considered a recipient of federal funding under the Act.  The Act was to cast a wider net to encompass "all the operations" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives federal funding.  29 U.S.C. § 794(b)(1)(A); Winfrey v. City of Chicago, 957 F. Supp. 1014, 1024 (N.D. Ill. 1997).  Then, in 1993, the Laws of Puerto Rico were amended to "attach" the SWA to the DRNA as an "operating component." Reorganization Plan No. 1 of 1993 provides:

> The Solid Waste Authority is hereby attached to the Department of Natural and Environmental Resources as an *operating* component. The Authority shall retain its operating and administrative autonomy and its juristic capacity, but shall respond directly to the Secretary [of the DRNA] and shall be subject to his/her supervision, evaluation and auditing.

P.R. Laws Ann. tit. 3, app. IV, § V (emphasis added).  Given that the SWA is attached to the DRNA as an "operating" component, it is certainly plausible that

CIVIL 08-1058 (FAB) (JA)                    12

the SWA might be considered an "operation" of the DRNA, which would make the SWA equally responsible under the Rehabilitation Act as the DRNA because of the 1988 amendment to the Act.  Moreover, because the SWA is attached to the DRNA and because the DRNA was alleged to receive federal funds, it is certainly plausible that some of said funds would be funneled into the SWA's coffers.  The plausibility of such a scenario is enhanced by the fact that the two entities are governed by the same Secretary, who has powers of supervision, evaluation, and auditing.  Indeed, the fact that the SWA is alleged to own the building in which certain DRNA operations are centered lends further weight to such plausibility.

Moreover, because the SWA was named in the complaint, and because the Rehabilitation Act claim addressed the "defendants" in general, there was enough substance in the claim to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. at 47).  Accordingly, because it is plausible that the SWA received federal funds, and because the SWA was put on sufficient notice of the Rehabilitation Act claim, the jurisdictional element of federal financial assistance is satisfied, at least for purposes of this motion to dismiss.

I turn next to the substantive elements of the Rehabilitation Act.  Specifically, the next issue is whether it is plausible that the SWA discriminated

CIVIL 08-1058 (FAB) (JA)                  13

against Toro or failed to offer him a reasonable accommodation.  A plaintiff "may show discrimination in either of two ways:  by presenting evidence of disparate treatment or by showing a failure to accommodate." Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001) (analyzing disability discrimination under the ADA, which is the same analysis as under the Rehabilitation Act according to Phelps v. Optima Health, Inc., 251 F.3d 21, 23 n.2 (1st Cir. 2001)).

Thus, the first question becomes whether it is plausible that Toro was subject to disparate treatment by the SWA.  The complaint alleges that the Puerto Rico Occupational Safety and Health Administration of the Department of Labor and Human Resources inspected the Environmental Agencies Building where Toro worked, and determined that there was evidence of "contamination" on floors 1, 5, 7, 8, 9 of the building.  It states that, "[s]ince [Toro] started to work in the new office building [he] developed constant allergies, shortness of breath and irritation that increased in intensity over time." (Docket No. 1, at 8, ¶ 21.)  The complaint then states, "*A large number of other employees demonstrated similar symptoms*." (Id. (emphasis added).)  In other words, other employees –indeed, employees on five different floors– were exposed to the same or similar conditions, and experienced similar symptoms, as Toro.  Accordingly, Toro's complaint does not make a plausible case to show that Toro was subjected to disparate treatment.

CIVIL 08-1058 (FAB) (JA)                    14

The next question is whether the SWA can be liable to Toro for money damages for a failure to offer Toro a reasonable accommodation.  The First Circuit follows a two pronged analysis in determining whether a covered entity has failed to provide a reasonable accommodation.  First, the plaintiff must show "not only that the proposed accommodation would enable [him] to perform the essential functions of [his] job, but also that, at least on the face of things, it is feasible for the [covered entity] under the circumstances."  Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001).  Second, the plaintiff must prove that the request was sufficiently direct and specific so as to put the covered entity on notice of the need for an accommodation.  Id. at 261.

Therefore, Toro first bears the burden of showing it was plausible that the SWA could feasibly have granted him the relief he sought.  The specific relief he sought was to be transferred "to an office and/or office building that does not contain the plethora of ailing agents found in the Environmental [A]gencies Building." (Docket No. 1, at 15, ¶ 51.)  Nowhere in the complaint, however, is it alleged that the SWA had the authority to transfer Toro to another office or building.  Indeed, nowhere does it appear that the SWA had any authority over Toro whatsoever.  The DRNA was Toro's employer, not the SWA.  The only information within the complaint touching on the relationship between Toro and the SWA is that the SWA owned the building in which Toro happened to work, and

CIVIL 08-1058 (FAB) (JA)                    15

that Toro worked for the SWA some 16 years ago.  (Docket No. 1, at 3, ¶ 5, at 5, § 12.)  Considering only the pleadings before me, I cannot find it plausible that the SWA could feasibly have ordered Toro moved to a different facility.  It is not for the owner of a building to instruct the employees of its tenant businesses which buildings or offices they may do their jobs in.  Toro has not pled any special facts to suggest his relationship with the SWA might be any different.  The fact that the SWA was "attached" to the DRNA by statute does not change the fact that the two are statutorily different entities with their own employees.  The DRNA was still Toro's only employer, and the SWA was still nothing more than the owner of the building where Toro worked.  Even if the "attached" relationship implied some ability by one entity to give orders to the other entity's employees, it was the SWA that was under the supervision of the DRNA's secretary, and not the other way around.  It would therefore be incongruous to find the SWA capable of controlling the DRNA's employees.  Accordingly, Toro cannot plausibly establish that the SWA discriminated against him or failed to offer him a reasonable accommodation under the third element of a Rehabilitation Act claim.  Toro's claim under the Rehabilitation Act is therefore dismissed for failure to state a claim upon which relief can be granted.

   2.    *42 U.S.C. § 1983*

      In his fourth cause of action Toro asserts a general claim under section 1983 of the   Civil Rights Act.  (Docket No. 1, at 17-18, ¶¶ 63-66.)   He alleges

CIVIL 08-1058 (FAB) (JA)                    16

defendants acted under color of state law in causing him physical and emotional

pain.  He seeks $3,000,000 in damages, as well as fees and costs under 42 U.S.C.

§ 1988.  Toro does not identify a specific constitutionally or federally protected

right as having been violated in this section of the complaint.  "[Section] 1983 'is

not itself a source of substantive rights,' but merely provides 'a method for

vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S.

386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

I therefore address whether section 1983 might afford Toro some remedy similar

to that available under the ADA or the Rehabilitation Act.  "Generally speaking,

section 1983 may be used to redress the deprivation of a . . . federal statute."

Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 176 (1st Cir. 2007) (citing

Maine v. Thiboutot, 448 U.S. 1, 4 (1980)).  This general rule is, however,

"festooned with exceptions."  Fitzgerald v. Barnstable Sch. Comm., 504 F.3d at

176.

> One familiar exception is that section 1983 cannot be
> used to enforce a statutory right when that statute's
> remedial scheme is sufficiently comprehensive as to
> demonstrate Congress's intent to limit the available
> remedies to those provided by the statute itself.  See
> [Middlexex County Sewerage Auth. v. Nat'l] Sea
> Clammers [Ass's], 453 U.S. [1] at 20-21[ (1981)].  This
> limitation ensures that plaintiffs cannot circumvent the
> idiosyncratic requirements of a particular remedial
> scheme by bringing a separate action to enforce the
> same right under section 1983.  See Smith v. Robinson,
> 468 U.S. 992, 1009 . . . (1984) . . . .

CIVIL 08-1058 (FAB) (JA)                    17

Id. at 176 (finding "that the remedial scheme of Title IX is sufficiently comprehensive to demonstrate Congress's intention to preclude the prosecution of counterpart actions against state actors –entities and individuals alike– under section 1983."). Id. at 179. More important to our analysis is that "[s]ection 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages." M.M.R.-Z. v. Puerto Rico, 528 F.3d 9, 13 n.3 (1st Cir. 2008) (citing A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803-06 (3d Cir. 2007) (no section 1983 action against official for violation of Rehabilitation Act); also citing Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997) (no section 1983 action against official for violation of ADA or Rehabilitation Act)).

    Here, it has already been determined that Toro cannot succeed on his claims under the ADA or the Rehabilitation Act. Those two acts have their own sufficiently comprehensive statutory remedial frameworks to preclude counterpart actions under section 1983. See 42 U.S.C. § 12117(a), (b); 29 U.S.C. § 794a. In light of the substantial body of case law precluding section 1983 claims as a fall-back for unsuccessful ADA and Rehabilitation Act claims, Toro's section 1983 claim must also be dismissed to the extent it is acting only as a "vehicle" to further the ADA and Rehabilitation Act claims.

CIVIL 08-1058 (FAB) (JA)                    18

Toro's complaint does not mention the Section 1 of the Fourteenth Amendment to the Constitution of the United States (the Equal Protection Clause) as part of his cause of action under section 1983.  He does, however, make a brief and vague allusion to it at the end of the facts section of his complaint. Accordingly, I treat it as if it were pled under section 1983.  "The disabled[1] are not a suspect class for equal protection purposes."  Toledo v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006) (citing City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 448-50 (1985)).  In order to succeed on such a claim, therefore, Toro "must allege that he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment."  Toledo v. Sanchez, 454 F.3d at 34 (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  Here, Toro has failed to allege that he was treated any differently from others situated similarly to him.  Rather, he alleges that other employees suffered similar symptoms (Docket No. 1, at 8, ¶ 21), and omits any allegation that such other employees received treatment different to that which he received.  He therefore has no right of recovery under the Equal Protection Clause.

Finally, in his surreply, Toro raises an argument under the Due Process clause of Section 1 of the Fourteenth Amendment to the United States Constitution.  There is no mention of the Due Process Clause in Toro's complaint,

_____

[1] I treat Toro as if he were disabled for the sake of argument, without making any determination as to whether he actually is.

CIVIL 08-1058 (FAB) (JA)                   19

but I nonetheless address the merits of such a claim here.  The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "The history of the substantive due process doctrine indicates that it is to be applied with 'caution and restraint.'" Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (quoting Moore v. E. Cleveland, 431 U.S. 494, 502 (1977) (plurality opinion, Powell, J.)).  Indeed, the clause "is not a substitute for traditional tort remedies." Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006) (citing Daniels v. Williams, 474 U.S. 327, 332 (1986)).

There are "two alternative tests by which substantive due process is examined:"  (1) as a violation of specific property interest, or (2) as conduct which "shocks the conscience." Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991). Under the first alternative, "it is only when some *basic and fundamental* principle has been transgressed that 'the constitutional line has been crossed.'" Santiago de Castro v. Morales Medina, 943 F.2d at 131 (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) (emphasis in original)).  "[T]he plaintiff must first show a deprivation of a protected interest in life, liberty, or property." Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005) (citing Rhode Island Bhd. of Corr. Officers v. Rhode Island, 357 F.3d 42, 49 (1st Cir. 2004)).  Traditionally encompassed within these interests are "activities relating to marriage,

CIVIL 08-1058 (FAB) (JA)                    20

procreation, contraception, family relationships, and child rearing and education."
Brown v. Hot, Sexy & Safer Prods., 68 F.3d 525, 532 (1st Cir. 1995) (quoting Roe v. Wade, 410 U.S. 113, 153 (1973)).  Here, Toro does not allege that he was at any time deprived of his liberty, and he does not identify any constitutionally recognized property interest of which he is supposed to have been deprived.  He merely cites personal and emotional injuries, and contends he had a property interest in his job.  Such an interest is not a fundamental, constitutionally recognized right, however.  Accordingly, he may not recover under the first theory of due process claims.

Under the second alternative application of the Due Process Clause, Toro is required to show that the SWA's actions "shock the conscience."  "A proximate causal link between a government agent's actions and a personal injury does not, in itself, bring a case out of the realm of tort law and into the domain of constitutional due process."  Frances-Colón v. Ramírez, 107 F.3d 62, 64 (1st Cir. 1997).  Rather, a plaintiff must also satisfy the more "onerous requirement" of demonstrating that the state's actions "shock the conscience of the court."
Rivera v. Rhode Island, 402 F.3d at 35.  The Supreme Court has almost never found this requirement to be met by plaintiffs, and the few circuit courts have done so have been presented with truly egregious circumstances.  Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999) (citing Rogers v. City of Little Rock,

CIVIL 08-1058 (FAB) (JA)                    21

152 F.3d 790 (8th Cir. 1998) (rape by police officer in connection with car stop); Armstrong v. Squadrito, 152 F.3d 564 (7th Cir. 1998) (57-day unlawful detention despite repeated requests)).  Where a complaint does not indicate actual intent to harm on the part of the defendants, but rather exhibits at most a deliberate indifference towards the plaintiff, the court's determination is context-specific. Ramos-Piñero v. Puerto Rico, 453 F.3d at 53.  The United States Supreme Court has held that the breaching of a duty of care owed to a plaintiff by failure to provide a safe work environment "is analogous to a fairly typical state-law tort claim" and not sufficient to constitute a violation of substantive due process rights. Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992) (no due process violation where sanitation worker suffered death by asphyxiation from sewer gas while working in a manhole) (see also Ramos-Piñero v. Puerto Rico, 453 F.3d at 54 (no due process violation for death of a fourteen-year-old boy when governmental entities failed to cover an open manhole).

        Here, Toro alleges "defendants' violations of plaintiff's constitutional rights were intentional, willful and wanton."  (Docket No. 1, at 10, ¶ 31.)  The most egregious factual allegation he musters, however, is that the SWA admitted workers into its building despite the fact that it may have had reason to know that conditions had deteriorated in its air conditioning system.  Such facts do not rise to the level of shocking the conscience, but rather are closely analogous to those

CIVIL 08-1058 (FAB) (JA)               22

of <u>Collins</u> in that they involve the physical injury of a public employee potentially caused by the negligence of a government entity.  There was no violation of substantive due process in <u>Collins</u>, and there was not one here.  Toro's section 1983 is therefore dismissed.

C.     State Law Claims

Toro's fifth cause of action raises Puerto Rico state law claims.  It invokes the Puerto Rico Disability Anti Discrimination Act, P.R. Laws Ann. tit. 1, § 501 *et. seq.*, as well as tort liability principles under Articles 1802 and 1803 of the Puerto Rico Civil Code, codified at P.R. Laws Ann. tit. 31, §§ 5141 and 5142.  (Docket No. 1, at 18-19, ¶¶ 67-72.)

Toro asserts that this court has supplemental jurisdiction over his state law claims because they are so related to his federal claims that the two sets of claims form part of the same case or controversy.  28 U.S.C. § 1367(a).  I may decline to exercise supplemental jurisdiction, however, if all claims over which it I have original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  When it appears "that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal

CIVIL 08-1058 (FAB) (JA)                    23

court should decline the exercise of jurisdiction by dismissing the case without prejudice." Rivera v. Murphy, 979 F.2d 259, 264-65 (1st Cir. 1992).

Here, the federal law claims were those claims made under the ADA, the Rehabilitation Act, and section 1983 of the Civil Rights Act.  Each of those is dismissed by this order.  Therefore, so too are Toro's remaining state law claims.

D.    Punitive Damages

Toro's sixth cause of action requests punitive damages under "the Constitution and laws of the United States" because "defendants' actions constitute gross negligence and reckless disregard for plaintiff's constitutional rights." (Docket No. 1, at 19, ¶ 74.)  In his response in opposition to the SWA's motion to dismiss, Toro concedes that he "never intended to claim punitive damages under the ADA or under the Rehabilitation Act." (Docket No. 46, at 12.) Toro must therefore have intended to seek punitive damages either under his section 1983 claim or under his state law claims, because these are the only other claims he makes with any specificity.  It is not clear, however, to which of the two he intended to attach his punitive damages claim.  Regardless, if he intended the plea for punitive damages to apply to the section 1983 claim, the plea fails because the section 1983 claim failed, and if the plea was meant to compliment his state law claims, it fails because his state law claims are dismissed for the reasons above.

CIVIL 08-1058 (FAB) (JA)                    24

IV.  CONCLUSION

Toro's claim under the Rehabilitation Act is dismissed because he cannot show that the SWA discriminated against him.  His section 1983 claim is dismissed because section 1983 cannot create an independent vehicle for ADA or Rehabilitation Act claims that provide their own frameworks for damages.  All federal law claims being thus dismissed, there exists no reason to assert supplemental jurisdiction over the state law claims, which are therefore dismissed as well.

In view of the above, the defendants' motion is GRANTED.  Accordingly, the complaint is DISMISSED.  The Clerk is to enter judgment accordingly.

SO ORDERED.

At San Juan, Puerto Rico, this 22d day of December, 2008.

S/ JUSTO ARENAS
Chief United States Magistrate Judge